IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

CHRISTOPHER H.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:19-cv-01192-JES-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 12) and the Commissioner's Motion for Summary Affirmance (Doc. 15). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Christopher H. filed an application for disability insurance benefits (DIB) on July 2, 2016, alleging disability beginning on June 10, 2016. His claim was denied on August 3, 2016 and upon reconsideration on November 10, 2016. Christopher filed a request for hearing concerning his DIB application which was held before the Honorable Kathleen Winters (ALJ) on March 15, 2018. At that hearing, Christopher was represented by an attorney, and Christopher and a Vocational Expert (VE) testified. Following the hearing, Christopher's claim was denied on

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 8, 9) on the docket.

1

September 4, 2018. His request for review by the Appeals Council (AC) was denied on April 8, 2019, making the ALJ's Decision the final decision of the Commissioner. Christopher filed the instant civil action seeking review of the ALJ's Decision on June 7, 2019.

## II

At the hearing, Christopher was 33 years old and worked as a correctional officer. In June 2016, Christopher sustained multiple injuries and fractures following a motorcycle accident. He claimed the following conditions limited his ability to work: fracture of fibula and tibia; fracture of left clavicle; fracture of humerus; fracture of left and right radius; contusion of left cerebral hemisphere; fracture of parietal bone; maxillary fracture; fracture of right zygomatic bone; fracture of sphenoid bone; and degloving[2] injury of left foot. AR 219.

Christopher testified about his work as a correctional officer which involved a lot of lifting – up to 50 pounds "maybe" three or four times a day. AR 46. The ALJ then asked Christopher's attorney "how are we going to get around no 12 months in earning [substantial gainful activity]?" AR 48. The attorney explained that Christopher would go on and off of work during the 12-month time period. "[I]t's just an unusual situation where he goes back and then he has this chronic problem with the wound and that's what's been keeping him out during this time." AR 49. The attorney further explained that Christopher's argument is that he made an unsuccessful work attempt during the relevant timeframe.

---

[2] "Degloving, also called avulsion, is a type of severe injury that happens when the top layers of your skin and tissue are ripped from the underlying muscle, connective tissue, or bone." Healthline.com, https://www.healthline.com/health/degloving (last visited Apr. 16, 2020). In his brief, Christopher provides the following description of a degloving injury: "A degloving injury, most commonly of a hand or foot, is one in which much or most of the skin and underlying fat layers are peeled away in a manner similar to removing a glove or sock, to expose the bone structure underneath." Plf's MSJ (Doc. 13 at pg. 3 n.2) (internal citation omitted).

Christopher testified about the pain in his left foot. He said it hurt if he did not elevate it and that his treating doctor, Jessica L. White, M.D., and other doctors told him to elevate it above his heart whenever it was painful. It therefore hurt when he drove because his foot was not elevated during that time. He said he would get up in the middle of the night in pain, he experienced throbbing pain, and he could not be up and walking more than two hours at most, otherwise he was in "excruciating pain." AR 60. His medications were, "[f]or the most part," effective. AR 62. He wore a boot on his left foot when his foot became "really bad." AR 65. He also had socks that kept pressure on his foot so that it did not throb as badly and kept the blood flowing. On a typical day, Christopher got up, got a cup of coffee, and then sat down with his foot up. When asked by the ALJ if there was anything else Christopher wanted to make sure the ALJ was aware of, Christopher answered, "I'm still fighting this thing on my foot. The pain is tremendous." AR 68.

Christopher answered his attorney was correct that Christopher took off work in the summer of 2017 because his left foot wound had re-opened. Christopher testified that when the wound re-opened: "It blows colorful or discolored seepage from it, it hurts really bad, I got, you know, I got an infection. It's very noticeable. My sock sticks to my foot. Even when I got a bandage on it, it still sticks – the nonstick bandages stick to it." AR 69-70. He said the pain increased when the wound reopened and would be at a pain level of 6 unless he was at work and then the pain would be at a level above 10. He confirmed he was again taken off of work as a correctional officer at the end of February 2018 because he "blew out [his] foot again. Uncontrollable bleeding and infection." AR 70. He said what did it was going up and down stairs. He explained. "Generally, when I Missed days for my foot, I tried to make it a three-day event for my days off so I

have time for my foot to heal so I can go back to work." AR 71. He missed 132 days of work in 2017.

Christopher again testified that he experienced throbbing in his left foot any time it was down, and he elevated his left foot all day while at home except for when he walked to the fridge. To elevate his left foot decreased the throbbing and swelling he experienced. He said it was hard for him to wear any kind of shoes. The VE was next questioned.

### III

In her Decision, the ALJ determined Christopher had the following severe impairments: morbid obesity and de-gloving of the left foot. The ALJ made the following residual functional capacity (RFC) finding: "[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb stairs or ramps, can never climb ladders, ropes, or scaffolds; and can occasionally stoop, kneel, crouch, or crawl." AR 27.

The ALJ detailed Christopher's July 2016 Function Report in which Christopher reported he was unable to walk as he was allegedly unable to put any weight on his left leg. The ALJ also included his testimony that he could not walk for longer than two hours in a day, spent much of his time with his foot elevated, his foot throbbed when not elevated, and that he had difficulty wearing shoes. The ALJ determined the objective medical evidence established Christopher's left foot degloving injury was a severe medically determinable impairment, but that his subjective allegations were not fully consistent with that objective medical evidence.

The ALJ cited the records after Christopher's June 2016 accident dated July 2016, October 2016, December 2016, January 2017, May 2017, June 2017, July 2017, August 2017, November 2017, January 2018, February 2018, and March 2018. The ALJ detailed from those records, among other things, Christopher's weight, BMI,

4

slightly antalgic gait, normal coordination, 5/5 motor strength in both lower extremities, scar tissue present, decreased range of motion of the left sub-talar joint, good range of motion of the forefoot, normal gait, normal neurological findings, negative swelling of the left heel, and negative for clubbing. The ALJ determined, "The record reveals medical signs and laboratory findings that demonstrate that listed conditions existed as severe medically determinable impairments, but this evidence does not corroborate the claimant's alleged functional deficits." AR 29. The ALJ next highlighted that Christopher's physical examinations revealed his gait had significantly improved during the time under review.

## IV

Christopher argues the ALJ made the following errors: the ALJ committed harmful legal error by failing to confront significant evidence contrary to her conclusion; the ALJ's credibility assessment is patently wrong; and the ALJ erred by finding Christopher could perform work based on an inadequate RFC. He also argues the AC erred by failing to remand the case in light of new and material evidence with a reasonable probability that the evidence would change the outcome of the Decision.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper

legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

6

4)      is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)      is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Christopher claims error on the ALJ's part at Step Four and claims the AC erred as well.

**A**

Christopher first argues that the ALJ failed to confront significant evidence contrary to her conclusion in the form of treating podiatrist Todd Snoeyink's treatment notes and wound clinic notes provided by treating physician's assistant Teresa Mejorado. The Commissioner argues that the ALJ *did* cite Dr. Snoeyink's treatment notes in her Decision, that Dr. Snoeyink's objective medical findings cited by the ALJ in her Decision showed Christopher's left foot healed shortly after his wound complications in June 2017, that the ALJ's omission of Christopher's need for a knee scooter was at most harmless error, and that the ALJ's omission of PA-C Mejorado's recommendations was at most harmless error.

Here, the Commissioner's brief details the evidence the ALJ did discuss and how that evidence is substantial support for her Decision. Of course, an ALJ "need not mention every snippet of evidence in the record." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). Nevertheless, to satisfy the substantial evidence standard, "the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion" and "an ALJ may not ignore evidence that undercuts [his] conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018). The Court finds that the ALJ failed to confront the contrary evidence and failed to explain her rationale for crediting the identified evidence over the contrary evidence. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (repeating that an ALJ "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it").

In support of her RFC finding that Christopher was capable of light work with some additional limitations, the ALJ pointed to the objective medical evidence. She detailed that following his motorcycle accident in June 2016 at which time Christopher's left foot de-gloving injury occurred, examination results showed he was "progressing well" in July 2016, there were no new fractures of the foot in October 2016, there was no abnormality upon physical examination in December 2016, he had slightly antalgic gait but was improving in January 2017, he had 5/5 motor strength in both lower extremities with no sensory change in May 2017, there was scarring over the lateral aspect of the left rear foot with healed over skin in July 2017, he had normal gait and no evidence of left leg swelling in August 2017, he had normal gait and neurological findings in November 2017, he had normal gait in January 2018, he was negative for cyanosis and edema in his extremities and had normal gait in February 2018, and there was no mention of any abnormal medical signs related to his left foot in March 2018. The ALJ further pointed out that with regard to Christopher's prescribed treatment, including

8

medications, such treatment was inconsistent with his statements concerning the intensity, persistence, and limiting effects of his symptoms. The ALJ again pointed to physical examinations which revealed his gait had significantly improved, and less than one year post-accident, he had 5/5 motor strength in both lower extremities with no sensory change to light touch and pinprick. As the Commissioner puts it, the ALJ considered evidence of Christopher's treatment that showed his injuries were healing after the accident. But therein lies the problem; the ALJ did not discuss the evidence (to which Christopher cites in his brief) which undercut that such healing supported an RFC of light work.

True, the ALJ included that in May 2017 Christopher continued to have a dressing on his left foot, that in June 2017 he was positive for an open wound with surrounding hyperalgesia, that in July 2017 there was some scar tissue present and significant pain to palpation along the lateral aspects of the heel and the plantar heel, and that in January 2018 there was slight drainage and the area was subjectively tender to touch. The ALJ did not elaborate upon such examination findings beyond including them in her Decision. Notably, the ALJ did not mention the evidence pertaining to the treatment Christopher underwent for his open wound.

Wound clinic treatment notes dated April 25, 2017 provide that Christopher was seen for a left heel ulcer, that the area was very tender with drainage at times, and that the area had healed but reopened a month before when he returned to work as a prison guard. AR 1267. At that time, PA-C Mejorado debrided the area and gave Christopher a script for a knee scooter with directions to offload at all times with it. AR 1272. In wound clinic treatment notes dated May 4, 2017, Christopher had a follow up for his left heel ulcer and Dr. Snoeyink indicated the plan was for Christopher to start applying weight to his foot and to be off work two more weeks. AR 1287. Those wound clinic notes provided under "History of

9

Present Illness" that Christopher presented with "chronic left heel ulcer." AR 1267, AR 1284. PA-C Mejorado provided an Authorization for Disability Leave and Return to Work dated July 3, 2017 which provided a diagnosis of "Left heel ulcer with neuropathic pain which heals but with recurrent breakdown" and which indicated that treatment of "Routine debridement and appropriate offloading should improve the heel area." AR 1305. The Authorization further provided that Christopher had a "Prior ulcer healed, new area for past 4 to 6 weeks." AR 1306. In wound clinic treatment notes dated October 18, 2017, PA-C Mejorado noted Christopher's History of Present Illness to be "recurrent left heel ulcer" which had reopened five days previously, after he hiked with his family. AR 1346. PA-C Mejorado debrided the wound and provided a script for an offloading boot. AR 1350-51. In a March 2018 treatment note, Christopher's "Clinical Indication" was "Open sore left foot for the past 10 months," and the note provided a "Fissure type wound present posterior [left] heel" with a large amount of serosanguineous drainage present. AR 1553-1554. The "Plan" at that time was, among other things, for Christopher to elevate his lower extremity while sitting, offload his posterior left heel, and to change the heel dressing daily. AR 1554.

The foregoing evidence is clearly evidence contrary to the cited evidence in the Decision showing a progressively improving left heel injury. At the very least, such evidence undercut any conclusion that Christopher's left heel injury had sufficiently improved to the point he was able to perform light work full-time such that the ALJ had a duty to confront it and explain her rationale for crediting the identified evidence over the contrary evidence. *See Moore*, 743 F.3d at 1123. The evidence specifically addressed the ongoing recurrence of Christopher's left heel wound and that it recurred following use (return to work as a correctional officer, hiking with his family). Moreover, the evidence explicitly detailed the treatment Christopher required for his reopened wound – debridement and the direction to

offload, lift his leg, etcetera. Rather than address such evidence in her Decision, the ALJ limited her discussion of the evidence in support of her conclusion (that Christopher's prescribed treatment was inconsistent with his statements) to physical examinations which showed his gait significantly improved and made only passing reference to continued dressing, an open wound on one date, and slight drainage on one date. The ALJ did not, therefore, build a logical bridge between the evidence of record and her conclusion in that regard. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (making clear and ALJ "must provide a logical bridge between the evidence and [her] conclusions").

While the Commissioner correctly points out that the ALJ *did* discuss certain evidence from Dr. Snoeyink, the Commissioner conveniently fails to recognize that the ALJ cited just one record – dated July 26, 2017 – which in fact set forth the very same information (Christopher had scarring over the lateral aspect of his left rear foot but the skin had healed over, there was scar tissue present, there was pain to palpation along the lateral aspects of the heel as well as the plantar heel) that Dr. Snoeyink set forth in March 2017 and April 2017. Again, such evidence runs contrary to a conclusion that Christopher improved as time went on. The Commissioner also cannot salvage the ALJ's Decision by reliance upon the harmless error doctrine. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result).

With regard to the ALJ's failure to mention Christopher's script for a knee scooter as treatment for his reopened wound, the Court has already explained why the failure to explicitly consider such evidence is harmful error. The Commissioner's argument that such omission was harmless given that Christopher's left heel wound healed within a short period of time and he used

11

the knee scooter for only short periods of time and eventually declined to use it even as his heel wound healed impermissibly pushes beyond the limits of the harmless error doctrine. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (noting the government seemed determined to "dissolve the *Chenery* doctrine in an acid of harmless error" where it seemed "to think that if it can find enough evidence in the record to establish that the [ALJ] *might* have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error") (emphasis in original); *see also Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (explaining the *Chenery* doctrine "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)).

With regard to the Commissioner's argument that the ALJ's omission of PA-C Mejorado's records was harmless error since her recommendations were not medical opinions entitled to any weight, that argument is also unavailing. Simply put, the information contained within her treatment records was *contrary* evidence in the record which the ALJ had an obligation to confront. That such evidence was not technically a "medical opinion" from an "acceptable medical source" does not render the failure to consider her notes harmless. The relevant Seventh Circuit authority provides an ALJ errs when she ignores evidence that undermines her conclusion (see *supra*); the Commissioner does not cite to any authority which requires that evidence to be from "acceptable medical sources" or that which is a "medical opinion" under the regulations. Moreover, the Commissioner again violates the *Chenery* doctrine by arguing that PA-C Mejorado's signed disability statements were statements related to an issued reserved to the Commissioner, and thus the ALJ's omission of such statements from the Decision was harmless error. Any reasons the Commissioner attempts to provide to defend the ALJ's Decision in this regard necessarily runs afoul of *Chenery*; the ALJ entirely omitted

a discussion of PA-C Mejorado's notes and statements so the ALJ obviously did not provide the grounds upon which she rejected those notes and statements. This case must be remanded.

The Court does not reach Christopher's remaining arguments that the ALJ's credibility assessment was patently wrong or that the ALJ erred by finding he could perform work based on an inadequate RFC assessment as the ALJ's failure to confront contrary evidence undermines the entirety of her Decision. Christopher's arguments illustrate the point: he says had the ALJ properly assessed the medical evidence of record, she may have come to a different conclusion regarding the consistency of his statements concerning the intensity, persistence, and limiting effects of his symptoms; and the RFC assessment contravened Christopher's statement he could be on his feet at most two hours in a day, and contravened PA-C Mejorado's order that Christopher to offload his wound and her note that he was to be off work while his reopened wound healed.

**B**

Lastly, Christopher argues that the AC erred by failing to remand this case in light of the new and material evidence from treating physician Dr. White. In a March 14, 2019 letter, Dr. White wrote that Christopher was in a motor vehicle accident in "6/2016 . . . During injury he suffered serious trauma to his left foot with degloving injury." AR 12. She wrote further that due to the damage from that injury, Christopher had complex regional pain syndrome type 2 of his left lower extremity and chronic neuropathic pain and traumatic ulceration to his heel that "has been following with wound clinic to treat but has had difficulty healing and preventing recurrence." *Id.* She stated further:

> Due to pain and swelling in left foot patient has difficulty with stairs and has to take frequent breaks to prop his foot due to pain and swelling. If he would return to work he would require multiple breaks throughout the day and would likely miss over 2 days per

> week for exacerbations of his foot pain and swelling. In current state he is able to stand up to an hour on his foot but will then have to sit and prop foot for a few hours to resolve swelling and pain before able to ambulate again. Given these limitations I do not see him being able to return to his prior state of employment as he would require breaks that his employer would not be able to accommodate.

*Id*. The Commissioner argues Christopher has not shown a valid basis for considering this evidence submitted after the ALJ's Decision. The Commissioner argues further that while Christopher has requested a remand based on this evidence, he has not shown that the evidence was new and material or that he had good cause for submitting it late as required for a Sentence Six remand. *See* 42 U.S.C. § 405(g) (permitting remand when a claimant shows there is evidence that is both new and material, and the claimant can also demonstrate good cause for not presenting that evidence to the ALJ).

In *Farrell v. Astrue*, the Seventh Circuit Court of Appeals determined that the AC in that case did not consider "new and material evidence" as required by the Social Security Administration's own regulations. 692 F.3d 767, 768 (7th Cir. 2012). The *Farrell* court continued that "several other aspects of the ALJ's decision independently require correction" which warranted reversal "in and of themselves (that is, without regard to the error committed by the Appeals Council)" and so the Seventh Circuit followed the procedure that "normally applies when the Appeals Council denies review" and remanded to the ALJ. *Id*. In *Stepp v. Colvin*, the claimant first contended the ALJ's denial of benefits was not supported by substantial evidence, and second, that remand for further proceedings was necessary in light of the "new and material" evidence. 795 F.3d 711, 713 (7th Cir. 2015). The *Stepp* court first determined the ALJ's decision was supported by substantial evidence and then addressed the claimant's argument

14

that her case should be remanded for consideration of "new and material" evidence that the AC allegedly declined to review. *Id*. at 721.

In light of the Seventh Circuit's statements in *Farrell* that several other aspects of the ALJ's decision in that case independently required correction which warranted reversal in and of themselves, and the order in which the Seventh Circuit considered the claimant's arguments in *Stepp*, this Court will not address Christopher's AC error argument. While the *Farrell* court pointed out that "whether the ALJ's decision is supported by substantial evidence is not the same question as whether the Appeals Council properly rejected [the claimant's] appeal," the Court does not believe it prudent to address Christopher's AC error argument where this matter must be remanded due to the ALJ's errors in the first instance. 692 F.3d at 770-71. As the Court recommends this case be remanded, the Court expects that the Commissioner will undertake a proper review of Dr. White's March 2019 letter to determine whether it should be considered upon remand.

V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 12) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 15) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal.

*Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on April 17, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE